**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prentice Williams, | No. CV-17-02161-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tempe, et al., | |
| Defendants. | |

Pending before the Court is Defendant Officer Ratko Aleksis's Motion for Summary Judgment.[1] (Doc. 135, "Mot."). The Court has now considered the Motion, Response (Doc. 153, "Resp."),[2] and Reply (Doc. 163, "Reply") along with relevant case law. The Court has determined that oral argument will not be helpful to resolution of this motion and will be vacated. *See* L.R. Civ 7.2(f).

**BACKGROUND**

In his First Amended Complaint, (Doc. 27, "FAC"), Plaintiff lists two counts and names as defendants the City of Tempe, the Tempe Police Department, Officer Ratko Aleksis, Officer Blake Dunn (collectively, "the Tempe Defendants") and

---

[1] This motion is filed only by Defendant Ratko Aleksis. For the sake of this motion, the Court will use "Officer Aleksis" or "Defendant" to refer to the filing party only and not all named defendants.

[2] Plaintiff's response is a joint response to this motion as well as to Defendants Albertsons and Safeway's Summary Judgment Motion (Doc. 133).

Albertsons/Safeway Inc. On August 31, 2018, this Court dismissed all claims against the Tempe Defendants except the Fourth Amendment claim against Officer Aleksis. (Doc. 132). In Count I, Plaintiff alleges that on July 8, 2015, Officer Aleksis stopped him without reasonable suspicion.[3] Count II does not implicate Officer Aleksis. The present motion is brought by Officer Aleksis and asks for summary judgment on the only remaining claim against him, the Fourth Amendment claim.

Defendant filed a separate statement of facts, (Doc. 136, "DSOF"), to which Plaintiff filed a controverting statement of facts, (Resp. at 7–9). Plaintiff does not dispute the following facts. On July 8, 2015, at approximately 11:28 p.m., the Tempe Police Department ("TPD") received a call on its non-emergency line reporting that a white car was sitting in a garage of a long-time vacant house (the "house"). TPD treats non-emergency calls similar to 911 calls in that it audio records the call, traces the call, dispatches officers, and takes notes in the computer aided dispatch system.

The following facts are as asserted by Defendant in his statement of facts, but Plaintiff "disputes" these facts in his controverting statement. The caller, "Renee," told TPD that the subject was going from the car to the house. The house is located in a known drug area and, itself, is known to be used for illegal drug use. Officer Aleksis was dispatched to the house and, upon his arrival, contacted Plaintiff. On July 8, 2015, Plaintiff had parked his white Buick Le Sabre at the house. Officer Aleksis saw that the house was boarded up and obviously abandoned. Because of what was reported by the caller, his own observation that Plaintiff parked (at night) his white Buick Le Sabre at a boarded-up abandoned house in a well-known drug area, and that the house was previously used for illegal drug activity, Officer Aleksis conducted a trespass investigation. During the investigation, TPD attempted to communicate with the owner or person responsible for the house. Those attempts proved unsuccessful. Because the owner or person responsible for the house could not be contacted, Officer Aleksis ended his trespassing investigation. Upon the conclusion of the trespass investigation, Plaintiff was permitted to leave.

---

[3] Throughout Plaintiff's papers, he refers to Officer Ratko Aleksis as Officer "Alexis Ratko," "Ratko Aleksis," and "Ratko."

In his controverting statement of facts, Plaintiff does not clearly state why he is disputing the above facts assertions. Plaintiff points to various documents in the record, but it is not entirely clear which documents Plaintiff is directing the Court to review. In several spots, Plaintiff appears to be citing an attached affidavit provided by the Plaintiff. In the affidavit, Plaintiff makes various assertions, including the following: (1) that the caller Renee "is a TPD undercover/surveillance officer who worked with 'Ratko' on surveilling" Plaintiff; (2) that he was not parking in the driveway, but that he "parked 'parallel' to a house on the street"; (3) that "if one parks there today, there's no concern and no one cares, then or now," and that the parked car "was a pretext by 'Ratko' and TPD undercover surveillance Off. 'Renee.'" (Resp. at 11).

In addition to his controverting statement of facts, Plaintiff also includes the following facts in his Response, which he also sets forth in affidavit (Doc. 160). On July 8, 2015, at about 11:30 p.m., Plaintiff was in the process of moving. He caught "Ratko" tailing him to his new residence. Plaintiff parked his car on the street and then had walked 225 yards away when Officer Aleksis asked Plaintiff if that was his parked car. Plaintiff alleges that Defendant used the location of Plaintiff's parked car as a pretext to make the stop. Defendant ordered Plaintiff to walk back to Plaintiff's car. Defendant then ordered Plaintiff away from the car, demanded his license, asked if Plaintiff still lived at the address on his license, ran a warrants check, and asked to enter Plaintiff's car. Plaintiff demanded Defendant call his sergeant, who came and released Plaintiff. Plaintiff alleges he was kept by Defendant for 78 minutes.

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Id.* at 323–24.

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the

evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

While the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Regardless of his pro se status, at summary judgment, the elements Plaintiff must prove and Plaintiff's burden of proof are not relaxed simply because he is appearing without the assistance of counsel. *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules" (citation omitted)).

## II. Analysis

### A. *Procedural Defects*

At the outset, the Court is compelled to address deficiencies present in Plaintiff's Response. First, in addition to his Response (Doc. 153), Plaintiff filed a sur-reply (Doc. 167) without moving for leave to do so. The rules do not contain a provision allowing parties to file sur-replies. *See Armenta v. Spencer*, No. CV-16-00697-TUC-DCB, 2018 WL 4698648, at *1 (D. Ariz. Oct. 1, 2018) ("There is no provision for Sur-replies."). And even then, "[c]ourts generally view motions for leave to file a sur-reply with disfavor." *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-CV-01118-BEN-BLM, 2018 WL 3198800, at *1 (S.D. Cal. June 26, 2018). The Court will strike Plaintiff's sur-reply and not consider it.[4]

Second, Plaintiff violated Federal Rule of Civil Procedure 56(c) and Local Rule of Civil Procedure 56.1(e) by not citing to specific evidence in the record in his Response. "Memoranda of law filed . . . in opposition to a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies . . . ." LRCiv

---

[4] The Court notes that even if Plaintiff's sur-reply was to be considered by the Court, Plaintiff fails to make any new arguments or cite to the record.

56.1(e). Plaintiff's Response contains no citations to his statement of facts.

Despite Plaintiff's failure to comply with Rule 56(c) and Local Rule 56.1(e), the Court will still rule on Defendant's Motion. Given the limited nature of the factual allegations, the Court is still able to consider whether there exists any genuine dispute of material fact.

### B. *Factual Disputes*

While Plaintiff has disputed some of Officer Aleksis's facts, none of Plaintiff's disputes of material facts are supported by evidence. The only material fact that Plaintiff appears to dispute is the identity of the caller who called TPD. Plaintiff asserts that the caller ("Renee") was an undercover officer working with Officer Aleksis, and that the call about Plaintiff's parked car was "pretext" by Officer Aleksis and the undercover officer. (Resp. at 11). However, Plaintiff has provided no evidence of this assertion other than his own affidavit attesting to this assertion. (*Id.*). While a party's own affidavit may be considered as evidence in the context of a motion for summary judgment, there are situations when a district court can disregard a selfserving affidavit. In *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007), the Ninth Circuit confirmed that a party's "selfserving" affidavit may establish a genuine issue of material fact in the context of a summary judgment motion. But the *Phan* court clarified that a district court may disregard a selfserving affidavit in certain circumstances, including when the affidavit "states only conclusions, and not such facts as would be admissible in evidence." *Id.* The *Phan* court also noted a case where the "declaration in question included facts beyond the declarant's personal knowledge and provided no indication how" the declarant knew these facts to be true. *Id.* at 910 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 & n.5 (9th Cir. 2002)). That is precisely the situation here. Plaintiff has not even provided an indication of how he knows the asserted facts to be true. Accordingly, the Court does not need to consider Plaintiff's affidavit as evidence and holds that Plaintiff has not established the existence of a genuine issue of material fact.

### C. *Fourth Amendment Claim*

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). "[T]he Fourth Amendment is satisfied [in such cases] if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Id.* (internal quotation marks and citation omitted). "Reasonable suspicion requires more than a mere 'hunch' of wrongdoing, but the degree of proof needed is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less demanding than that for probable cause.'" *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citations and internal quotation marks omitted)). "Whether reasonable suspicion exists depends upon the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

"In assessing the role of telephone tips in investigative stops, the Supreme Court and [the Ninth Circuit] have focused on whether the tips have 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" *Id.* (quoting *White*, 496 U.S. at 327). In *Williams*, the Ninth Circuit held that officers had reasonable suspicion to stop Williams "based on information they possessed" and the reliability of a phone tip. *Id.* at 309. First, the tipster had telephoned a police hotline and provided his name, address, and phone number. *Id.* The Supreme Court has noted that calling a police line that traces callers "provide[s] some safeguards against making false reports with immunity." *Navarette v. California*, 572 U.S. 393, 400 (2014). Second, the officers verified the information relayed by the tipster through independent observation. *See Williams*, 846 F.3d at 309. Third, the tipster provided specific criminal allegations of someone sleeping in his car at an apartment complex where he did not live. *See id.* Also, the incident occurred in a high-crime area during the early morning hours. *See id.* Although "[a]n individual's presence in an area of expected criminal activity, standing

- 7 -

alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime . . . officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citations and alterations omitted). The *Williams* court also stated that "[e]ven if there were a question as to whether the tip, on its own, provided the officers with the requisite reasonable suspicion to detain [the individual], the tip was certainly sufficient to justify further investigation," and that "[a]fter receiving the information provided by the tipster, the officers would have been delinquent had they not driven over to the parking lot to investigate the situation." *Williams*, 846 F.3d at 310.

Here, Defendant began the investigatory stop based on a call to TPD regarding possible criminal activity. Similar to *Williams*, the caller contacted the TPD on a line that allows the TPD to trace the calls. (DSOF ¶ 2). The caller provided her first name, informed TPD that that a person was going from a white car to a vacant house, which is known to be used for illegal drug use. The caller's information was consistent with the observations of Officer Aleksis when he found a white car parked at the vacant house in a well-known drug area. (DSOF ¶¶ 4, 6). Based on the totality of the circumstances surrounding the stop, Officer Aleksis had reasonable suspicion to stop Plaintiff. Accordingly, the investigatory stop conducted by Officer Aleksis did not violate Plaintiff's Fourth Amendment rights.

## CONCLUSION

As discussed above, Plaintiff has not provided sufficient evidence to create a genuine issue of material fact, and the Court finds that no violation of Plaintiff's Fourth Amendment rights occurred. Accordingly, summary judgment is granted in favor of Defendant.

**IT IS THEREFORE ORDERED** granting Defendant Officer Ratko Aleksis's Motion for Summary Judgment (Doc. 135) and vacating oral argument.

**IT IS FURTHER ORDERED** striking Plaintiff's sur-reply (Doc. 167).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 3rd day of July, 2019.

Honorable Susan M. Brnovich
United States District Judge